# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE N. ALLEN,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 1:17-cv-00239-DAD-JDP<br><br>FINDINGS AND RECOMMENDATIONS THAT THAT PLAINTIFF'S SOCIAL SECURITY APPEAL BE DISMISSED ON THE MERITS<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

Plaintiff, referred to herein as "claimant," seeks judicial review of a final decision by the Commissioner of Social Security concluding that he was erroneously paid $20,647 in Social Security retirement benefits while he was a civil detainee held at state expense at the Coalinga State Hospital. The matter is currently before the court on the parties' briefs, which are referred without oral argument to the undersigned Magistrate Judge.[1] The undersigned will recommend that the court dismiss plaintiff's appeal on the merits.[2]

---

[1] On May 22, 2017, the Commissioner declined to consent to the assignment of this case to a U.S. Magistrate Judge for trial and disposition and requested the assignment of this case to a U.S. District Court Judge. ECF No. 11.

[2] The Commissioner has withdrawn her argument that plaintiff's appeal should be dismissed as untimely. ECF No. 36 at 3.

1

## I. BACKGROUND

In March 1995, Mr. Allen was convicted of two counts of rape in violation of California Penal Code § 261. ECF No. 13-1, Certified Administrative R. ("CAR") 42. In September 2003, Mr. Allen was paroled from prison for his rape convictions. *Id.* On September 4, 2003, prior to his release on parole, the Los Angeles County Superior Court ordered that Mr. Allen be detained pending further proceedings under California's Sexually Violent Predator Act ("SVPA")[3] because it was "likely that he would engage in sexually violent behavior if released from the jurisdiction of the Department of Corrections." ECF No. 31-6, Req. for Judicial Notice ("RJN") Ex. 1. On May 25, 2011, the Los Angeles County Superior Court again ordered that Mr. Allen be detained pending further proceedings under the SVPA because it was "likely that [he would] engage in sexually violent criminal conduct[] if released." ECF No. 31-7, RJN Ex. 2; CAR 42. On February 21, 2018, Mr. Allen was found by a jury to be a sexually violent predator ("SVP") under California Welfare and Institutions Code § 6603. ECF No. 28; ECF No. 31-8, RJN Ex. 3. From the date of his 2003 parole until the present, Mr. Allen has been confined by court order in a public institution at public expense. RJN Ex. 1; RJN Ex. 2; RJN Ex. 3; ECF No. 28; CAR 127-28.

In February 2012, while Mr. Allen was confined under the May 2011 court order, he applied for Social Security retirement benefits. CAR 13-17. From March 2012 until May 2014, he received Social Security payments totaling $20,647. CAR 18-24, 27-29. On May 16, 2014, the Social Security Administration ("SSA") notified him that he had been overpaid $20,647 because he was incarcerated at the time he received these funds. CAR 10, 21. Mr. Allen challenged that determination, and, on December 9, 2015, an Administrative Law Judge issued a decision concluding that Mr. Allen had been overpaid because, even though he had not yet had a trial pursuant to § 6603, he was nonetheless a sexually-violent-predator civil detainee confined in a public institution at public expense. CAR 7-12. The decision of the Administrative Law

---

[3] The SVPA provides a procedural mechanism for the State of California to continue confinement of individuals who have been convicted of certain sexually violent crimes after those individuals would otherwise be released from prison. *See* Cal. Welf. & Inst. Code § 6600(a).

Judge to deny benefits became the final decision of the Commissioner when the Commissioner's Appeals Council denied Allen's request to review the appeal. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481. Mr. Allen filed this lawsuit on February 17, 2017. ECF No. 1.

## II. STANDARD OF REVIEW

Congress has provided for limited judicial review of a decision by the Commissioner to deny benefits under the Act. In reviewing findings of fact with respect to such a determination, this court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*. Nevertheless, a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *see also Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (requiring that a Commissioner's decision be free of "legal error").

## III. DISCUSSION

### A. California's Sexually Violent Predator Act

The SVPA authorizes civil commitment of certain individuals convicted of sexually violent crimes after those individuals have completed their criminal sentences. *See* Cal. Welf. & Inst. Code § 6600(a). An individual's initial or extended commitment under the SVPA depends upon his or her status as an SVP. An SVP is:

> a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.

*Id.* § 6600(a)(1).

3

The process for determining whether a convicted sex offender is an SVP takes place in several stages, both administrative and judicial. Generally, the California Department of Corrections and Rehabilitation ("CDCR") screens inmates in its custody at least six months before their scheduled release from prison. *Id.* § 6601(a). If CDCR finds that an inmate may be an SVP, the CDCR Director forwards a request for a commitment petition to the county where the person was convicted. *Id.* § 6601(h)-(i). If that county's legal counsel agrees with the request, a petition for commitment is filed in the superior court. *Id.* § 6601(i). The superior court reviews the petition and determines at a hearing whether there is "probable cause" to believe that the person is likely to engage in sexually violent predatory criminal behavior upon release. *Id.* § 6602. The alleged predator is entitled to the assistance of counsel at this hearing. *Id.* If the court finds probable cause, the court orders continued confinement pending a trial to determine whether the individual is an SVP under section 6600. *Id.* §§ 6601(b), 6602.

At trial, the alleged predator is entitled to "the assistance of counsel, the right to retain experts or professional persons to perform an examination on his or her behalf, and . . . access to all relevant medical and psychological records and reports." *Id.* § 6603(a). Either party may demand and receive a trial by jury. *Id.* § 6603(a)-(c). The trier of fact is charged with determining whether the requirements for classification as an SVP have been established "beyond a reasonable doubt." *Id.* § 6604. Any jury verdict on the issue must be unanimous. *Id.* § 6603(d).

This process takes time. It is not infrequent for years to elapse between a probable cause finding and trial.

### B. Social Security Act's Prohibition on Payment to Certain Individuals

The Social Security Act prohibits payment of benefits to prisoners, certain other inmates of publicly funded institutions, fugitives, probationers, and parolees. *See* 42 U.S.C. § 402(x). The prohibition on payment of benefits to "certain individuals who are held at public expense in public institutions" applies, *inter alia*, to persons confined pursuant to a finding that they are sexually dangerous. *Id.* § 402(x)(1)(A)(iii). Specifically, the Social Security Act prohibits payment to individuals who "immediately upon completion of confinement [in a prison, jail, or

4

other correctional institution] pursuant to conviction of a criminal offense an element of which is sexual activity, [are] confined by court order in an institution at public expense pursuant to a finding that the individual is a sexually dangerous person or a sexual predator or a similar finding . . . ." *Id.* Stated plainly, this subsection prevents payment of Social Security benefits to any individual who: (1) is confined in an institution at public expense, (2) by court order pursuant to a finding that the individual is a sexually dangerous person or a sexual predator or a similar finding, and (3) enters that confinement immediately upon completion of imprisonment for a crime that contains sexual activity as an element of the offense.

**C. Analysis**

We must consider whether the three requirements of § 402(x)(1)(A)(iii) are met. The first and third requirements need not long delay us: claimant was confined in an institution at public expense, and his confinement commenced immediately upon his completion of a term of imprisonment for a crime that has sexual activity as an element. The second requirement presents a more difficult question: is confinement that is authorized following a probable-cause hearing under California Welfare & Institutions Code § 6602, rather than following a full-blown civil-commitment trial under § 6603, "confine[ment] by court order in an institution at public expense pursuant to a finding that the individual is a sexually dangerous person or a sexual predator or a similar finding"? 42 U.S.C. § 402(x)(1)(A)(iii). Our focus falls on the phrase "or similar finding."

Claimant urges us to interpret 42 U.S.C. § 402(x)(1)(A)(iii) narrowly.[4] He argues that "confined by court order . . . pursuant to a finding that the individual is a sexually dangerous

---

[4] In his reply brief, plaintiff also argues that, "Section 204(x)(1)(A)(ii) gives the definition of what a 'similar finding' means." ECF No. 32 at 4. It does not. Section 204(x)(1)(A)(ii), which immediately precedes the subsection at issue here, provides:

> (x) Limitation on payments to prisoners, certain other inmates of publicly funded institutions, fugitives, probationers, and parolees
> (1)(A) Notwithstanding any other provision of this subchapter, no monthly benefits shall be paid under this section or under section 423 of this title to any individual for any month ending with or during or beginning with or

5

person or a sexual predator or a similar finding" must mean confinement pursuant to a definitive finding that he is an SVP "beyond all reasonable doubt" after a civil-commitment trial. *See* Cal. Welf. & Inst. Code §§ 6603, 6604. Since, at the time of his application for benefits, claimant was confined pursuant to an *interim* finding after a § 6602 *probable-cause hearing*, he argues that he was not prohibited from receiving benefits under the statute.

The Commissioner favors a broader interpretation of 42 U.S.C. § 402(x)(1)(A)(iii). She argues that the statute must be construed to include persons in claimant's circumstances. ECF No. 31 at 7 ("[A] finding[] . . . made pursuant to a probable cause hearing conducted under Welfare & Institutions Code § 6602, . . . qualif[ies] as a 'finding that [Mr. Allen] is a sexually dangerous person or a sexual predator or a similar finding' under § 402(x)(1)(A)(iii).").

As with any question of statutory interpretation, "we begin with the text of the statute." *Limtiaco v. Camacho*, 549 U.S. 483, 488 (2007). If we find the statutory text to be "plain and unambiguous," then we "apply the statute according to its terms."[5] *Carcieri v. Salazar*, 555 U.S.

---

> during a period of more than 30 days throughout all of which such individual--
>
> . . .
>  (ii) is confined by court order in an institution at public expense in connection with--
> >  (I) a verdict or finding that the individual is guilty but insane, with respect to a criminal offense,
> >  (II) a verdict or finding that the individual is not guilty of such an offense by reason of insanity,
> >  (III) a finding that such individual is incompetent to stand trial under an allegation of such an offense, or
> >  (IV) a similar verdict or finding with respect to such an offense based on similar factors (such as a mental disease, a mental defect, or mental incompetence)

42 U.S.C. § 402(x)(1)(A)(ii). Though section 204(x)(1)(A)(ii) uses the words "similar" and "finding," it neither defines them nor sheds light on the meaning of "similar finding" in section 402(x)(1)(A)(iii).

[5] In conducting this inquiry, we are guided by judicial interpretations of phrases like "similar finding" that appear in statutes but are not explicitly defined. *See Rousey v. Jacoway*, 544 U.S. 320, 329 (2005) (interpreting "similar plan or contract" in 11 U.S.C. § 522(d)(10)(E) as "like, though not identical to, the specific plans or contracts listed in § 522(d)(10)(E), and consequently [sharing] characteristics common to the listed plans or contracts"); *United States Department of State v. Washington Post Co.*, 456 U.S. 595, 598-603 (1982) (interpreting "similar file" in FOIA's

379, 387 (2009). The provision at issue prohibits payment of benefits to certain individuals who are "confined by court order . . . pursuant to a finding that the individual is a sexually dangerous person or a sexual predator or a *similar finding* . . . ." 42 U.S.C. § 402(x)(1)(A)(iii) (emphasis added). "Similar finding" is not defined by the statute, and the dictionary definition of "similar" does not shed much light on whether a § 6602 probable-cause finding is similar to a § 6603 beyond-a-reasonable-doubt finding. *See* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/similar (last visited Jan. 25, 2019) ("1. having characteristics in common: strictly comparable. 2. alike in substance or essentials: corresponding.").

At first blush, the first dictionary definition of similar—having characteristics in common—suggests that the two findings may indeed be similar: a § 6602 probable-cause hearing and a § 6603 trial can both result in a finding relating to sexual violence that permits civil detention of an individual at public cost. However, the differences between the two findings are not negligible: a § 6603 trial affords the alleged SVP more rights, including a right to a trial by jury, a right to retain experts or professional persons to perform an examination, a requirement of a showing beyond a reasonable doubt, and a right to all relevant medical and psychological records and reports. *See* Cal. Welf. & Inst. Code §§ 6602, 6603, 6604. In short, the text is not "plain and unambiguous," *Carcieri*, 555 U.S. at 387, and we must broaden our inquiry and consider whether the similarities are more important than the differences.

Accordingly, we look to the structure of § 402(x). *See Planned Parenthood Arizona Inc. v. Betlach*, 727 F.3d 960, 971 (9th Cir. 2013) ("[A] section of a statute should not be read in isolation from the context of the whole Act." (quoting *Richards v. United States*, 369 U.S. 1, 11 (1962))). Section 402(x) is titled, "Limitation on Payment to Prisoners, Certain Other Inmates of Publicly Funded Institutions, Fugitives, Probationers, and Parolees." This signals the importance of confinement throughout the broader § 402(x). The subsections of § 402(x) maintain this focus on confinement, listing several categories of individuals ineligible for benefits and covering a

---

privacy exemption broadly after consideration of the legislative history, statutory context, and policy ramifications).

7

wide range of persons involuntarily confined at public expense, including persons convicted of criminal offenses, persons deemed incompetent to stand trial, and persons found not guilty by reason of insanity. *See* 42 U.S.C. § 402(x). In contrast, the statute specifies that similarly-situated persons who are not so confined may be eligible for benefits:

> [A]n individual shall not be considered confined in an institution comprising a jail, prison, or other penal institution or correctional facility during any month throughout which such individual is residing outside such institution *at no expense* (other than the cost of monitoring) to such institution or the penal system or to any agency to which the penal system has transferred jurisdiction over the individual.

*Id.* § 402(x)(1)(B)(i) (emphasis added). The statutory structure thus reflects a desire not to permit individuals confined at public expense to collect Social Security benefits.

The apparent intent to bar payments to public detainees is borne out in the Social Security Act's legislative history. *See Casalvera v. Comm'r of Soc. Sec.*, 998 F. Supp. 411, 412-14 (D. Del. 1998) (summarizing legislative history of Social Security Act's suspension of benefits to individuals confined in public institutions). Prior to 1980, an otherwise qualified prisoner was eligible for Social Security disability and retirement benefits. In 1980, Congress amended section 223 of the Social Security Act to suspend disability benefits to convicted felons confined in jails, prisons, or other penal institutions or correctional facilities, during the period of confinement. Act of October 19, 1980, Pub. L. No. 96-473, § 5(a)(1), 94 Stat. 2263, 2264-65 (1980). The purposes for the change are explained in the Senate Report accompanying the bill proposing the amendment. The Report provides:

> The committee believes that the basic purposes of the social security program are not served by the unrestricted payment of benefits to individuals who are in prison or whose eligibility arises from the commission of a crime. The disability program exists to provide a continuing source of monthly income to those whose earnings are cut off because they have suffered a severe disability. *The need for this continuing source of income is clearly absent in the case of an individual who is being maintained at public expense in prison*.

8

S. Rep. No. 96-987, at 7-8 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 4787, 4794 (emphasis added). In 1983, Congress repealed the aforementioned provision and, as a substitute, amended section 202 of the Social Security Act to add subsection (x). Employing nearly identical language as was contained in the 1980 provision, Congress expanded the suspension of Social Security benefits to include retirement and disability benefits. Social Security Amendments of 1983, Pub. L. No. 98-21, § 339(a), 97 Stat. 65, 133 (1983). Congress has revised 42 U.S.C. § 402(x) since 1983, but it has retained the same basic prohibition against the receipt of benefits by persons confined in public institutions. *See* Act of October 22, 1994, Pub. L. No. 103-387, § 4(a), 108 Stat. 4071, 4076 (1994) (extending prohibition to include criminally insane individuals confined to institutions); H.R. Rep. No. 103-491, at 7-8 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3266, 3267, 3272-74.

Taken together, the statutory structure and legislative history of § 402(x)(1)(A)(iii) demonstrate that a driving concern of the drafters, if not *the* driving concern, was to prevent individuals confined in institutions at public expense from receiving Social Security benefits. In this critical regard, § 6602 and § 6603 findings are similar. In contrast, we see no evidence in the structure or history of § 402(x)(1)(A)(iii) that the precise standard of proof applied by the court in authorizing confinement is of outsize importance. We are thus not persuaded that the dissimilarities emphasized by claimant in his appeal, having to do principally with standard of proof, warrant a finding that a § 6602 and a § 6603 finding are not similar. Instead, we conclude that allowing claimant, who is detained at public expense, to receive benefits would contravene a crucial goal of § 402(x)(1)(A)(iii)—to prevent individuals whose basic costs of living are already being paid from the public treasury from receiving additional income at public cost in the form of Social Security benefits.[6]

---

[6] The Social Security Administration's Program Operations Manual System ("POMS") may be of some relevance. POMS is an internal agency document used to assist in processing Social Security claims, which addresses how to process claims by individuals confined in California pursuant to a probable-cause hearing under the SVPA. *See* PR 06805.006 California, A. PR 13-052 Suspension of Title II Benefits for Confined Persons Identified as Sexually Dangerous Predators in California, https://secure.ssa.gov/poms.nsf/lnx/1506805006. Courts have indicated that POMS may be due some weight in interpreting statutory provisions. *See Evelyn v.*

9

It is further worth noting that, if the court were to hold that § 402(x)(1)(A)(iii) applies only after a full civil-commitment trial under § 6603 of the SVPA, we would render the section a virtual nullity in California. Under the state's current statutory scheme for designating persons as sexually violent predators, potential sexual predators are first held pursuant to a probable-cause hearing. *See* Cal. Welf. & Inst. Code §§ 6601-02. The full civil-commitment trial does not occur until later—often, as noted above, years later. *See id.* Since § 402(x)(1)(A)(iii) applies only to persons who are confined "immediately" after a criminal sentence "pursuant to a finding that the individual is a sexually dangerous person or a sexual predator or a similar finding," if the court adopted claimant's interpretation, no person found to be an SVP in California's system would fall within the prohibition.

We conclude that a probable-cause finding under § 6602 that an individual is likely to be a sexually violent predator is "similar" within the meaning of 42 U.S.C. § 402(x)(1)(A)(iii) to a finding beyond a reasonable doubt under § 6603 and § 6604 that an individual is a sexually violent predator. Accordingly, claimant's appeal lacks merit. The Commissioner's decision should stand; claimant was overpaid $20,647 in Social Security retirement benefits under section 204(a)(1)(A) of the Social Security Act.

## IV. FINDINGS AND RECOMMENDATIONS

We recommend that the court dismiss this appeal on the merits. The undersigned submits the findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of

---

*Schweiker*, 685 F.2d 351, 352 n.5 (9th Cir. 1982) ("Because we believe that there is adequate support elsewhere for our holding in this case, we only mention POMS as additional support; we need not address the disputed matter of the precise legal force or persuasiveness of [POMS]. Suffice it to say that while the guidelines do not have the force and effect of law . . . , they are not of absolutely no effect or persuasive force." (citations omitted)); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006) (interpreting a regulation and stating, "The POMS does not have the force of law, but it is persuasive authority."). POMS states that suspension of benefits is appropriate for individuals who "remain[] in custody through the time of the probable cause hearing" as well as "[d]uring the period between the probable cause hearing and the trial" because those individuals "remain[] in custody in a secure facility." This view comports with our view that 42 U.S.C. § 402(x)(1)(A)(iii) bars plaintiff's collection of Social Security benefits. *Id.* n.8.

California.  Within 14 days of the service of the findings and recommendations, claimant may file written objections to the findings and recommendations with the court and serve a copy on all parties.  Claimant's objection should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).  Claimant's failure to file objections within the specified time may result in the waiver of rights on appeal.  *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:  January 31, 2019   _____
UNITED STATES MAGISTRATE JUDGE

No. 203